

**FILED**

MAR 29 2010

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| **LAZARO MARTINEZ,** ) | File No.10 - 5019 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **COMPLAINT** |
| ) | |
| **UNITED FIRE AND CASUALTY** ) | |
| **COMPANY,** ) | |
| ) | |
| Defendant. ) | |

Comes now Lazaro Martinez and for his complaint states as follows:

1. Plaintiff is a resident of Spearfish, South Dakota.

2. The Defendant is a corporation with its principal place of business outside the state of South Dakota.

3. The amount in controversy exceeds $75,000.

4. Jurisdiction is based on diversity of citizenship under 28 U.S.C. Section 1331.

5. Plaintiff was previously employed by Newkirk Ace hardware and Spearfish, South Dakota.

6. On July 29, 2005, Plaintiff suffered injury to his spine in the course of his employment, resulting in surgery and a cervical fusion on October 7, 2005.

7. One of the known risks and side effects of anterior cervical fusion is damage to the laryngeal nerve that controls the vocal cords. Plaintiff suffered that nerve damage during surgery.

1

8.  Plaintiff developed difficulty with his vocal cords, resulting in permanent hoarseness and difficulty controlling his voice, as well as the need to continually clear his throat in an effort to speak clearly. This condition is known as dysphonia.

9.  Plaintiff also developed difficulty swallowing, known as "dysphagia."

10. Defendant United Fire and Casualty Company is an insurer providing workers compensation insurance coverage to Plaintiff's employer.

11. The law in South Dakota required Defendant to provide workers compensation coverage for Plaintiff's work related injuries in the form of medical care and reimbursement of permanent partial disability benefits.

12. Defendant sought an independent medical evaluation from Dr. Wayne Anderson in Spearfish, South Dakota.

13. Dr. Anderson's evaluation took place on July 24, 2006, and he reported that Plaintiff had suffered a permanent injury to his neck, attributed the cause to be the work injury on January 29, 2005, and assigned a 15% permanent partial disability rating to that injury.

14. Dr. Anderson also told the Defendant that the laryngeal nerve damage had not been sufficiently evaluated, and recommended testing by an ear nose and throat specialist, Dr. Mona Abaza, in Denver, Colorado.

15. On August 16, 2006 and August 23, 2006, Defendant did agree to commence providing weekly benefits based upon Dr. Anderson's 15% permanent partial disability rating to the cervical spine.

16. On October 30, 2006, Dr. Mona Abaza, ear, nose, and throat specialist in Denver, Colorado, conducted EMG nerve conduction tests and a laryngoscopy to

examine Plaintiff's throat and vocal cords. She issued a report confirming dysfunction and neurological damage. Dr. Abaza recommended progressive speech therapy, and also recommended further testing to better diagnose and deal with Plaintiff's difficulties in swallowing.

17. On March 22, 2007, Defendant obtained a review of Plaintiff's medical records from a Minneapolis neurologist, Dr.Yelena Usmanova. Dr. Usmanova agreed with Dr. Abaza's assessment of nerve damage, and agreed that it could be attributed to the cervical surgery. However, she concluded that Plaintiff's difficulty with swallowing was not related to the surgery.

18. On July 9, 2007, Dr. Anderson issued a follow up to his earlier report, noting the results of Dr. Abaza's testing. He assigned a 5% whole person disability rating to the dysphonia (difficulty speaking) and a separate 15% whole person disability rating to the dysphagia (difficulty swallowing). He concluded that both conditions were secondary to Plaintiff's surgery.

19. Despite two reports from physicians retained by Defendant, one of which unequivocally assigned the cause of Plaintiff's speech problems to his surgery, and the other agreeing that the speech problems could be attributed to the surgery, Defendant refused to provide medical care or benefits for either the difficulty speaking, or the difficulty swallowing.

20. On July 17, 2007, Defendant terminated payment for Plaintiff's permanent partial disability benefits on the basis that he had now received the full extent of the benefits available under the 15% permanent partial disability rating assigned to his cervical spine by Dr. Anderson. However, he had received nothing at all on the

additional 5% assigned for dysphonia, or the 15% assigned for dysphagia.

21. On August 7, 2007, Plaintiff's attorney, Dennis Finch, wrote to counsel for the Defendant pointing out the reports of Dr. Anderson and Dr. Usmanova, and pointing out Plaintiff's very difficult financial situation. Attorney Finch asked to explain its termination of benefits in disregard of its own medical reports.

22. Defendant did not respond to these questions.

23. On August 13, 2007, Defendant requested that Plaintiff attend yet another independent medical examination, this time with Dr. Usmanova in Minneapolis. Plaintiff agreed.

24. On August 22, 2007, attorney Finch wrote to counsel for Defendant, stating that "...such as the nature and extent of disability for the future, however, there should be no question that he is entitled to the impairment benefits as assessed by Dr. Anderson." Attorney Finch again pointed out that because of the Defendant's termination of insurance coverage, Plaintiff "...has been forced into an extremely difficult financial position."

25. Defendant offered no explanation.

26. On October 1, 2007, Plaintiff made himself available in Minneapolis for examination by Dr. Usmanova, whose subsequent report confirmed that Plaintiff's dysphonia (hoarseness and difficulty with his vocal cords) was indeed the result of damage to the laryngeal nerves. She also confirmed that this nerve damage occurred during the cervical fusion surgery, and assigned a 5% whole person permanent disability rating to that injury, the same rating assigned by Dr. Anderson.

27. Dr. Usmanova reported that the Plaintiff's ongoing dysphagia (difficulty

swallowing) is not related to the surgery. Dr. Usmanova supported her opinion by stating that while dysphagia can result from this surgery, in most cases it resolves within 12 weeks after surgery. Since Plaintiff's dysphagia had not resolved, Dr. Usmanova deduced that the dysphagia was not related to the surgery.

28. Defendant still refused to accept responsibility for either condition.

29. Plaintiff was in desperate financial circumstances.

30. On September 27, 2007, Plaintiff requested that the Division of Labor order Defendant to comply with its duty to commence benefits, and pointed out the lack of any dispute as to the 5% permanent disability associated with Plaintiff's speech difficulties.

31. On October 23, 2007, Defendant responded to Plaintiff's motion. Defendant admitted that the 5% disability rating assigned to Plaintiff's speech problems were related to his work. Defendant disputed that since the 15% disability rating assigned to Plaintiff's swallowing problems were related to his work.

32. Nevertheless, Defendant continued in its refusal to commence payment of any benefits whatsoever with respect to the 5% disability rating associated with Plaintiff's speech problems.

33. On November 27, 2007, the division of labor entered an order requiring Defendant to accept responsibility for both the 5% speech disability, as well as the 15% swallowing disability.

34. The Division of Labor ruled that "there is not and has not been any genuine issue with regard to claimant's entitlement to the 5% permanent partial impairment due to dysphonia ... ."

35. Defendant still did not commence payment for either the 5% rating or the 15% rating.

36. On December 31, 2007, Defendant filed an appeal in circuit court from the order issued on November 27, 2007. The appeal was frivolous, malicious, and filed in bad faith for purposes of delay, as evidenced by the fact that Defendant waited over 30 days just to file a document with one sentence in it.

37. On January 9, 2008, Plaintiff made a motion to dismiss Defendant's appeal, on the basis that it was not filed within the 30 day time limit allowed by law.

38. Defendant continued to delay, but on April 17, 2008, Defendant withdrew its appeal. On April 18, 2009, the court granted the motion to dismiss.

39. Defendant did pay the permanent partial disability benefits, as ordered, but only after extensive delays and refusals.

40. Defendant's refusal to commence payment of the 5% permanent disability to Plaintiff's ability to speak clearly, in disregard of its own doctor's opinions, and in disregard of its own admissions that these benefits were owing, lacked any reasonable basis in fact or law, and Defendant knew it had no basis to deny these benefits.

41. Defendant's refusal to pay the additional 15% permanent partial benefits based on Dr. Anderson's evaluation of his dysphagia, and instead continue seeking other opinions that would support denial of his claim, did not constitute a reasonable investigation on good faith effort to properly determine its obligations.

42. Plaintiff has been harmed by Defendant's wrongful conduct, including the following:

6

    (a)    Plaintiff was forced to borrow money and incur interest;

    (b)    Plaintiff was forced to go many months without income, causing him serious financial difficulty, anxiety, frustration, embarrassment, and worry.

    (c)    Delay in testing and treatment recommended by Defendant's own retained experts; and

    (d)    Unnecessary legal expenses.

43. Defendant's conduct constitutes bad faith withholding of insurance benefits.

44. Defendant's conduct constitutes barratry, as defined under §SDCL 20-9-6.1, and §SDCL 22-12-1, in that Defendant's appeal of the dysphonia benefits determination was frivolous.

45. Defendant acted with fraud, malice, or oppression, requiring exemplary damages.

WHEREFORE, Plaintiff asks for judgment in an amount to be determined as fair and reasonable by the jury, according to the proof at trial, and for all other relief deemed appropriate by the Court, including costs and prejudgment interest.

**TRIAL BY JURY IS DEMANDED**

Dated this __25__ day of March, 2010.

*(signature)*

Mike Abourezk
ABOUREZK LAW FIRM
2020 W. Omaha
Rapid City, SD 57709-9460
Telephone: (605) 342-0097
Facsimile: (605) 342-5170
Mike@abourezk.com
*Attorneys for Plaintiff*